**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |  |
|---|---|
| TONONA THOMPSON, *individually and on behalf of all similarly situated individuals*,<br><br>    Plaintiff,<br><br>v.<br><br>GLOBAL TRUST MANAGEMENT, LLC and QUICK PROCESSING SOLUTIONS,<br><br>    Defendants. | Civil Action No. 3:20-cv-00844-MHL |

**AMENDED CLASS ACTION COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 15(a)(1), Plaintiff Tonona Thompson, individually and on behalf of all similarly situated individuals, by Counsel, and files this Amended Class Action Complaint against Global Trust Management, LLC, and Quick Processing Solutions. In support of her Complaint, Plaintiff alleges as follows:

**PRELIMINARY STATEMENT**

1.      This case involves a rent-a-tribe enterprise that was established by Think Finance, LLC to evade state usury laws and make illegal loans. As the Court is aware, there have been multiple cases against other participants in the alleged enterprise. *See Gibbs v. Rees*, Case No. 3:17-cv-00386 (E.D. Va. 2017) (transferred to the bankruptcy court sitting in the Northern District of Texas); *Gibbs v. Plain Green*, *LLC*, Case No. 3:17-cv-00495 (E.D. Va. 2017); *Gibbs v. Haynes Investments*, *LLC*, Case No. 3:18-cv-00048 (E.D. Va. 2018); *Gibbs v. Curry*, Case No. 3:18-cv-00654- (E.D. Va. 2018). The present case seeks to hold a debt buyer and debt collector who purchased and/or attempted to collect from consumers on these illegal debts.

2.      For more than seven years, Think Finance and its subsidiaries (collectively "Think Finance") operated a rent-a-tribe scheme, which sought to evade the usury laws of certain states by using the Chippewa Cree, Otoe-Missouria, and Tunica-Biloxi Tribe (collectively, the "Tribes") as the conduit for their loans. Even though regulatory enforcement efforts and private lawsuits uncovered their misconduct as early as December 2014, Think Finance, Defendants, and others continued to engage in the scheme even though "[n]o one appear[ed] to seriously dispute" that these rent-a-tribe "loans violated a host of state and federal lending laws." *See Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 669 (4th Cir. 2016).

3.      Under the rent-a-tribe model, loans were made in the name of Plain Green, LLC, Great Plains Lending, LLC, and Mobiloans, LLC—three entities formed under tribal law to disguise Think Finance's role and to ostensibly shield the scheme by exploiting tribal sovereign immunity. In return for the use of their name, the tribal companies received a nominal flat-fee of the revenue from the loans, but they otherwise had no control over the income, expenses, or day-to-day operations of the businesses.

4.      The illegality of the loans and the practices of the illegal lending enterprise have been established by numerous actions across the nation, including in a Virginia class action suit of which Plaintiff was a class member. *See Gibbs v. Plain Green, LLC*, No. 3:17-cv-00495-MHL (E.D. Va.) (Doc. 141 (order granting final approval to class action settlement)); *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 128 (2d Cir. 2019), *cert. denied sub nom. Sequoia Capital Operations, LLC v. Gingras*, No. 19-331, 2020 WL 129562 (U.S. Jan. 13, 2020).

5.      Defendants are debt buyer and debt collectors who purchased and/or attempted to collect from consumers on these illegal debts. This is an action for actual and statutory damages, punitive damages, costs, and attorney's fees for Defendants' violations of the Racketeer Influenced

and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968; Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p; and state consumer protection and usury statutes.

6.      Defendants assist the tribal lenders in perpetuating their illegal debt collection by participating in the process as principals. Defendants buy or otherwise obtain collection rights as to the already-illegal loans, and then stand in the shoes of the original lenders by collecting principle, interest, and fees that consumers cannot validly be charged on loans that violate states' laws because of their exorbitant interest rates.

7.      This conduct permits the criminal enterprise to persist, as consumers are led to believe, even through the collection process, that the debts are valid, legal, and properly owing when they in fact never were.

8.      Great Plains loaned money at usurious rates across the United States, including in Michigan, where Plaintiff lived, and in Virginia, where it settled a national class action. As with any lender, many thousands of consumers to whom Great Plains loaned money defaulted, causing Great Plains to place those accounts in the hands of collection entities like Defendants. *See Gibbs*, No. 3:17-cv-00495-MHL (Doc. 141 at 6–7 (describing terms of class-action settlement, one of which was the cessation of "collecting, selling transferring or assigning its outstanding consumer loans that it owned at the time the Settlement Agreement was signed")).

9.      The loans Defendants attempted to collect from Plaintiff were made in Michigan in violation of relevant state usury and licensing laws. Because of this, the loans were void ab initio and any attempt to collect on the debts is unsupported by any legally enforceable obligation. Based on Defendants' conduct, Plaintiff alleges violations of RICO. Defendants and others received millions of dollars derived from the collection of unlawful debts. Defendants actively participated in the scheme and conspired with the lenders and each other to repeatedly violate state lending

statutes resulting in the collection of unlawful debt from Plaintiff and the Class Members. Defendants' acts described herein are unlawful as set forth in 18 U.S.C. § 1962(c)–(d).

10.     Plaintiff alleges claims against Defendants Global Trust for violations of § 1692e and § 1692f and of the FDCPA for their conduct of making false and misleading representations regarding the amount and legal status of the debt and for actually collecting on the illegal debt. Through the use of deceptive practices and false statements, Global Trust collected on loans that were invalid under relevant state law and that it knew or should have known were invalid.

11.     The FDCPA was enacted by Congress specifically to prevent the kind of abusive conduct exhibited by Global Trust here. The FDCPA was meant to "eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. Congress recognized that abusive debt collection practices, such as the practices employed by Global Trust, cause harm to consumers, including "contribut[ing] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §§ 1692(a). Accordingly, the FDCPA "is a strict liability statute, and debt collectors whose conduct falls short of its requirements are liable irrespective of their intentions." *Ruth v. Triumph P'ships*, 577 F.3d 790, 805 (7th Cir. 2009).

12.     In addition, Defendants' conduct violates the usury and consumer protection statutes of Michigan and many other states with similar statutes.[1]

---

[1] Those states include Alabama, Arizona, California, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kentucky, Massachusetts, Maryland, Minnesota, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Rhode Island, South Dakota, and West Virginia. *See* ALA. CODE § 5-18-4 (loans made without a license "shall be void"); ARIZ. REV. STAT. § 6-613(B) (loans that charge illegal finance charges are "voidable"); CONN. GEN. STAT. § 36a-

13.     Discovery will confirm that Defendants engage in collection conduct as described herein in Virginia, sending at least hundreds of dunning letters to residents of this Judicial District in seeking to collect amounts based upon the illegal loans described above.

14.     Discovery will likewise confirm that Defendants used template letters to collect from consumers across the country, and it used letters like those sent to Plaintiff to thousands of consumers in Virginia whose Great Plains loans were delinquent.

15.     Discovery will further confirm that these dunning letters had Defendants' and the enterprise's desired effect, as consumers in the Commonwealth of Virginia, including in this

---

558 (c)(1) (loans made without a license are "void" and uncollectable); FLA. STAT. ANN. § 516.02 (loans made with excessive interest rates are "not enforceable"); GA. CODE § 16-17-3 (loans made without a license "shall be void ab initio"); IDAHO CODE § 28-46-402 (payday loans made without a license are "void, uncollectable and unenforceable"); 815 ILL. COMP. STAT. 122/4-10 (payday loans made without a license "shall be null and void"); IND. CODE ANN. § 24-4.5-5-202 (loans made without the proper authority are "void and the debtor is not obligated to pay either the principal or loan finance charge"); KY. REV. STAT. ANN. § 286.4-991 (loans made without a license are void); MASS. GEN. LAWS ANN. ch. 140, § 110 (small loans made without a license are void); MD. CODE, COM. LAW § 12-314 (small loans made without a license that charge excessive interest rates are "unenforceable"); MINN. STAT. §§ 47.60, 47.601 (provisions in loan contracts charging excessive interest rates are void and unenforceable); id. § 56.19 (authorizing debtor to recover all amounts paid on loans made in violation of licensing requirements); MONT. CODE § 31-1-712 (Any deferred deposit loan made by an unlicensed lender "is void, and the unlicensed person may not directly or indirectly collect, receive, or retain any loan principal, interest, fees, or other charges related to the loan"); N.H. REV. STAT. ANN. § 399-A:23 (any contract for small loan by unlicensed lender is "null and void"); N.J. STAT. ANN. § 17:11C-33 (consumer loans are void if made without a license); N.M. STAT. ANN. § 58-15-3 (small loans made without a license are void); N.Y. GEN. OBLIG. LAW § 5-511 (usurious loans are "void"); N.Y. BANKING LAW § 355; N.C. GEN. STAT. ANN. § 53-166 (small loans made without a license are void); OHIO REV. CODE ANN. § 1321.02 (small loans made without a license are void); OR. REV. STAT. § 725.045 (consumer finance loans made without a license are "void"); 6 R.I. GEN. LAWS ANN. § 6-26-4 (loans charging excessive interest "shall be usurious and void"); S.D. CODIFIED LAWS § 54-4-44 (loans charging excessive interest or made without a license are "void and uncollectible"); W. VA. CODE § 46A-5-101 (loans made in violation of Consumer Credit and Protection Act are "void and the consumer is not obligated to pay either the principal or the loan finance charge").

District, paid Defendants millions of dollars in illegal interest, fees, and charges assessed against the already-illegal loans.

## JURISDICTION AND VENUE

16.     The Court has original jurisdiction over Plaintiff's RICO (*see* 18 U.S.C. § 1964) and FCDPA (*see* 18 U.S.C. § 1692) claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367.

17.     Venue is proper in this Court pursuant to 18 U.S.C. § 1965 because Defendants have transacted their affairs in Virginia, including, upon information and belief, the collection of millions of dollars in this District and the transmission of countless communications in an attempt to collect debts in Virginia.

## PARTIES

18.     Plaintiff Tonona Thompson is a natural person residing in Michigan and a "consumer" as defined and governed by the FDCPA. 15 U.S.C. § 1692a.

19.     Defendant Global Trust Management is a Florida entity with its principal place of business in Tampa, Florida. Global Trust is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a.

20.      Defendant QPS is a Florida entity with its principal place of business in Tampa, Florida. Discovery will show that QPS's primary area of business is the taking of payments from consumers' bank accounts under contract with debt collectors like Global Trust.

## FACTS

*The debt was made using triple digit interest rates in violation of state usury laws.*

21.     Plaintiff Thompson received a usurious payday loan from Great Plains. She obtained the loan for personal, family, and household use.

22.     Plaintiff Thompson's Great Plains loan was void *ab initio* pursuant to Michigan's law prohibiting the collection of, among other things, any interest on a usurious loan. MICH. COMP. LAWS ANN. §§ 438.31–32.

23.     The loan is unenforceable under Michigan law because the attributable interest rate, 200%, is leaps and bounds over the amounts permitted.

24.     Michigan law sets out a 5% annual interest rate as the law of that State, and permits parties to agree to a higher rate. MICH. COMP. LAWS ANN. § 438.31. The agreed-upon rate, however, may not exceed 7% annually. *Id.*

25.     If a loan exceeds the prescribed interest rate, any seller, lender, or assignee "is barred from the recovery of any interest, any official fees, delinquency or collection charge, attorney fees or court costs and the borrower or buyer shall be entitled to recover his attorney fees and court costs from the seller, lender or assigns." *Id.* § 438.32.

26.     Michigan, like most states, has enacted a Consumer Protection Act that prohibits deceptive conduct by businesses. Michigan's Act, as explained below, prohibits the conduct in which Global Trust engaged in duping Michigan consumers like Plaintiff into making payments on loans that are unenforceable under Michigan law.

### *The loans are illegal.*

27.     Plaintiff's loan was made by an illegal lending enterprise that was formed to avoid state usury and licensing laws, including in Michigan, Virginia, and other states with similar laws.

28.     The loans flout such consumer-protection laws, and the enterprise designed its lending and collection efforts—in which Defendants play a key operational role as collectors on delinquent loans—as though the loans were governed by a bogus set of Tribal laws and were therefore legitimate.

29.     For more than eight years, a company called Think Finance, LLC and its subsidiaries (collectively "Think Finance") operated a lending business, which sought to evade state usury laws by using its association with Native American tribes as a front for its business.

30.     The purpose of this model was to avoid banking regulatory issues and leverage Think Finance's existing sourcing, underwriting, and servicing platforms from a previous rent-a-bank model that was shut down by the Federal Deposit Insurance Corporation.

31.     Think Finance identified state regulation, including interest rate caps and prohibitions on payday lending, to be its primary regulatory concern.

32.     A central feature of Think Finance's business model is the choice-of-law and arbitration provisions used in its lending agreements. The non-tribal participants in the scheme will claim that they have no liability for their violations of state and federal laws because only tribal law applies to the loans. Such claims have been uniformly denied by courts from a variety of jurisdictions across the country, including by this Court with respect to loan agreements similar to those at issue here.[2]

---

[2] *See Gibbs v. Haynes Invs., LLC*, 967 F.3d 332 (2020); *Gibbs v. Sequoia Cap. Ops., LLC*, 966 F.3d 286 (2020); *Gibbs v. Stinson*, No. 3:18-cv676, 2019 WL 4752792, at *14–18 (E.D. Va. Sept. 30, 2019); *see also Gingras v. Think Fin.*, 922 F.3d 112 (2d Cir. 2019); *Brice v. 7HBF No. 2, Ltd.*, No. 19-CV-01481-WHO, 2019 WL 5684529 (N.D. Cal. Nov. 1, 2019); *Brice v. Plain Green*, 372 F. Supp. 3d 955 (N.D. Cal. 2019). *Cf. Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 2016 WL 4820635, at *7 (C.D. Cal. Aug. 31, 2016); *W. Sky Fin., LLC v. State ex rel. Olens*, 300 Ga. 340, 348 (2016), *reconsideration denied* (Dec. 8, 2016); *Inetianbor v. CashCall, Inc.*, No. 13-60066-CIV, 2015 WL 11438192, at *3 (S.D. Fla. Dec. 8, 2015); *Cooper v. W. Sky Fin., LLC*, No. 13 CVS 16487, 2015 WL 5091229, at *10 (N.C. Super. Aug. 27, 2015); *MacDonald v. CashCall, Inc.*, No. CV 16-2781, 2017 WL 1536427, at *10 (D.N.J. Apr. 28, 2017), *aff'd*, 883 F.3d 220 (3d Cir. 2018); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 336 (4th Cir. 2017); *Hayes*, 811 F.3d at 675; *Rideout v. CashCall, Inc.*, No.  2018 WL 1220565, at *8 (D. Nev. Mar. 8, 2018).

33.     There have been numerous regulatory efforts and private lawsuits challenging Think Finance and its co-conspirators' illegal lending and collection of unlawful debt since as early as 2013.

34.     Notably, Think Finance challenged a cease and desist letter issued to Great Plains by the State of New York warning it to stop offering its illegal credit products to consumers in New York. *Otoe-Missouria Tribe v. N.Y. Dep't of Fin. Servs.*, 974 F. Supp. 2d 353, 356 (S.D.N.Y. 2013), *aff'd*, 769 F.3d 105 (2d Cir. 2014).[3]

35.     On September 30, 2013, the district court denied Great Plains' request for a preliminary injunction, finding that the "undisputed facts demonstrate[d]" that the illegal activity was "taking place in New York, off of the Tribes' lands," and thus, Great Plains was "subject to the State's non-discriminatory anti-usury laws." *Id*. at 361.

36.     The district court further reasoned, "There is simply no basis . . . that the Tribes are treated differently from any other individuals or entities that enter New York to lend to New York residents." *Id*.

37.     On October 1, 2014, the Second Circuit affirmed the decision and made several damaging observations. Among other things, the Second Circuit noted that "a tribe has no legitimate interest in selling an opportunity to evade state law." 769 F.3d 105, 114 (2d Cir. 2014) (citing *Washington v. Confederated Tribes*, 447 U.S. 134 (1980)).

38.     The Second Circuit further explained that "[m]uch of the commercial activity at issue takes place in New York. That is where the borrower is located; the borrower seeks the loan

---

[3] Think Finance funded and spearheaded this litigation, including drafting the complaint and deciding when to file but left its name off the pleadings.

without ever leaving the state, and certainly without traveling to the reservation" and that "collection clearly takes place in New York." *Id*. at 115.

39.     These damaging findings were not the only problem for the lending scheme at the end of 2014—the Pennsylvania Attorney General had filed its enforcement action against Think Finance on December 17, 2014. *See Commonwealth of Pennsylvania v. Think Finance, Inc.*, Case No. 14-7139 (E.D. Pa.).

40.     Since then, many other lawsuits have challenged the validity of the loans in addition to the collection of unlawful debt on those loans. *See, e.g.*, *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 119 (2d Cir. 2019) (describing the history of the case), *cert. denied sub nom. Sequoia Capital Operations, LLC v. Gingras*, No. 19-331, 2020 WL 129562 (U.S. Jan. 13, 2020); *CFPB v. Think Fin., LLC*, No. CV-17-127-GF-BMM, 2018 WL 734661, at *1-2 (D. Mont. Feb. 6, 2018) (describing the allegations and history of the case); *Brice v. Plain Green, LLC*, 372 F. Supp. 3d 955, 963 (N.D. Cal. 2019) (describing history of the case and nature of claims); *Gibbs v. Rees*, No. 3:17CV386, 2018 WL 1460705, at *1–4 (E.D. Va. Mar. 23, 2018) (describing the history of the case and nature of the claims).

41.     Despite these regulatory enforcement efforts and private lawsuits establishing the illegality of the loans—including a nationwide class settlement providing over $375 million dollars in relief to consumers approved by this Court[4]—Defendants nonetheless continue to attempt to collect these debts from consumers.

---

[4] *See Gibbs v. Plain Green, LLC*, Case No. 3:17-cv-00495-MHL (E.D. Va. Dec. 13, 2019) (Doc. 141 (granting final approval of class action settlement).)

### *Defendants Global Trust and QPS Received Unlawful*
### *Interest from Plaintiff Thompson*

42.     Since early 2019 and as recently as September 10, 2020, Global Trust has attempted to collect on Plaintiff's Great Plains loan.

43.     Plaintiff was delinquent in her Great Plains loan at the time Global Trust began its collection efforts, and Global Trust used its connection to other members of the illegal enterprise— the supposed Tribal lenders, among others—to obtain Plaintiff's loan or at least the rights to collect on the delinquent amount.

44.     Defendants' conduct in obtaining and collecting on Plaintiff's loan was identical to that used with other consumers, including within the Commonwealth of Virginia.

45.     Global Trust collected on Ms. Thompson's Great Plains loan between the time it purchased the loan and the filing of this lawsuit. Global Trust used QPS as the means by which to obtain the money Plaintiff supposedly owed by accessing her bank account on at least one occasion within the one year prior to filing this case.

46.     QPS debited no less than $346.67 from Plaintiff Thompson, which performed such debits on behalf of Global Trust.

47.     In late 2019, Global Trust asserted that Plaintiff Thompson still owed $2,395.19 on her Great Plains debt. Global Trust communicated this supposed fact to Plaintiff in a dunning letter in which it identified Plaintiff's loan as "delinquent."

48.     Global Trust further informed Plaintiff in this same dunning letter that "[t]his communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose."

49. Because Plaintiff Thompson's debt was illegal, Defendants had no authority under any agreement or law to collect any amount from Plaintiff or any consumer. Yet Defendants forged on in collecting such debts on behalf of the enterprise.

50. In an attempt to collect on Plaintiff Thompson's loans, Global Trust sent her several letters misrepresenting the status of her debt and called her repeatedly in an attempt to collect the amount owed.

51. Acting as the collection arm of the enterprise, Defendants participated in the enterprise's operations by perpetuating the supposed validity of the illegal loans and collecting from consumers like Plaintiff money supposedly due pursuant to the illegal debts.

52. Because the enterprise's business model depends in part on consumers taking out loans repeatedly, Defendant Global Trust kept the enterprise's operations functioning by convincing consumers that they owed money they did not, and QPS continued such operations by receiving the actual payments from consumers.

53. The representations made by Global Trust in its communications with Plaintiff were false and misleading. These representations resulted in Plaintiff and other consumers, including within Virginia, paying interest and other charges on illegal loans.

54. Defendants' conduct also resulted, again according to the enterprise's designed plan, in their collection of an illegal debt.

55. Defendants' use of dunning letters and collection processes is part of the enterprise's operations, as such benefits the tribal lenders by permitting them to continue duping consumers into believing their loans are legitimate when they are not. Collection efforts reinforce to consumers that the debts are valid because someone is trying to collect them when they become delinquent just as with other, legal debts like credit card or cell phone bills.

56.     Put simply, the enterprise continues to operate, making and collecting-on illegal loans, by using collection efforts as another means to convince consumers that the loans are genuine and permissible when in truth they are illegal and consumers are under no obligation to repay them.

57.     Defendants' collection processes further comprise operation of the enterprise, as Defendants developed, with the understanding of the tribal lenders, the processes and procedures by which they communicated with consumers like Plaintiff and that, subsequently, allowed for the receipt of money in collection of the enterprise's illegal debts.

58.     The collection of those illegal amounts from consumers like Plaintiff harmed them in that they paid money they did not truly owe, and Defendants obtained money from loans that were not legally enforceable.

59.     Defendants' efforts further contributed to the continued functioning of the illegal enterprise because it permitted other members of the enterprise to dispose of their delinquent, illegal loans to willing partners.

60.     Those willing partners, the Defendants, in turn benefitted the enterprise by allowing it a conduit by which it could easily rid itself of delinquent loans while at the same time build Defendants' bottom lines with a captive source of collection revenue from consumers who thought their illegal loans from the other enterprise members were valid.

61.     After she received Global Trust's dunning letters, Plaintiff learned of the nationwide settlement cancelling all Great Plains loans and did not make any additional payments to Global Trust. Plaintiff informed Global Trust of this settlement.

62.     In response, Global Trust told her that her Great Plains loan was not included in the settlement and continued its collection attempts.

63.     Regardless of the accuracy of Global Trust's statement that Plaintiff's loan was not included in the Great Plains settlement, even assuming Defendants may have been ignorant of the illegality of the loans they sought to collect upon, Plaintiff put Defendants on notice that the loans were illegal by bringing the Great Plains settlement to Defendants' attention.

64.     Plaintiff's loan was void under Michigan law, and it was unlawful for any person to collect any principal or interest on the void loan.

65.     Additionally, because Plaintiff's loan was invalid, it was false and misleading for Global Trust to represent that she owed an outstanding balance on an invalid debt, that the debt was "delinquent," or to accept any payments on, or amount to "settle," the alleged debt.

66.     Accordingly, Defendants Global Trust and QPS received no less than $346.67 from Plaintiff as a result of her illegal Great Plains loan, the majority of which was credited to usurious interest and fees.

67.     Such conduct amounts to the collection of an unlawful debt under RICO.

### CAUSES OF ACTION

### COUNT ONE:
### VIOLATIONS OF RICO, 18 U.S.C. § 1962(c)
### (CLASS CLAIM AGAINST ALL DEFENDANTS)

68.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

69.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class (the "RICO Class") initially defined as:

> All consumers who: (1) lived in Michigan or any state with similar usury laws; (2) when they entered into a loan agreement with Great Plains; and (3) who were the subject of collection or attempted collection by Global Trust Management and/or QPS.

> Plaintiff is a member of the putative class.

70.     **Numerosity**. **Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The Class and Subclass members are geographically disbursed throughout the United States. The names and addresses of the class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice

71.     **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Defendants are members of the enterprise from which the usurious loans sprung; (2) whether Defendants participated in the management or affairs of the enterprise and, thus, are liable for the collection of the illegal loans; (3) whether the loans were illegal under Michigan's and other states' usury statutes; (4) the appropriate amount of damages; (5) the nature of Defendants' violations; and (6) and the extent that Defendants' violations were intentional.

72.     **Typicality**. **Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All claims are based on the same facts and legal theories.

73.     **Adequacy of Representation**. **Fed. R. Civ. P. 23(a)(4)**. Plaintiff is an adequate representatives of the putative class because her interests coincide with, and are not antagonistic to, the interests of the members of the class that she seeks to represent. Plaintiff has retained counsel competent and experienced in such litigation, and they intend to continue to prosecute the

action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor her counsel have any interest that might cause them to not vigorously pursue this action.

74.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

75.     Defendants violated RICO by seeking to collect and, in fact, collecting interest on debts that were unlawful under multiple states' laws and that used triple digit interest rates, including Michigan's.

76.     As alleged above, Defendants violated § 1962(c) of RICO through the "collection of unlawful debt." 18 U.S.C. § 1962(c).

77.     RICO defines "unlawful debt" as a debt which was incurred in connection with "the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

78.     Defendants, during the pertinent times, were directly and materially involved in this intentional misconduct and knew or should have known the subject loans were illegal under state law, but they pursued the scheme anyway.

79.     This conduct began sometime as early as 2013, continues to date, and will be repeated again and again in the future to the detriment of consumers.

80.     Defendants' conduct is a part of a broader practice of frequent and persistent violations of RICO as to the illegal loans.

81.     Plaintiff and the Class Members were injured as a result of Defendants' violations of 18 U.S.C. § 1962(c).

82.     Accordingly, Defendants are jointly and severally liable to Plaintiff and the putative class members for their actual damages, treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

**COUNT TWO:**
**VIOLATIONS OF RICO, 18 U.S.C. § 1962(d)**
**(CLASS CLAIM AGAINST ALL DEFENDANTS)**

83.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

84.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class (the "RICO Class") initially defined as:

> All consumers who: (1) lived in Michigan or any state with similar usury laws; (2) when they entered into a loan agreement with Great Plains; and (3) who were the subject of collection or attempted collection by Global Trust Management and/or QPS.

> Plaintiff is a member of this putative class.

85.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the Class and Subclass members are so numerous that joinder of all is impractical. The

Class and Subclass members are geographically disbursed throughout the United States. The names and addresses of the class members are identifiable through the internal business records maintained by Global Trust, and the class members may be notified of the pendency of this action by published and/or mailed notice

86. **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Defendants are members of the enterprise from which the usurious loans sprung; (2) whether Defendants conspired with others (including but not limited to Think Finance, Great Plains and MobiLoans) to violate RICO; (3) whether the loans were illegal under Michigan and other states' usury statutes; (4) the appropriate amount of damages; (5) the nature of Defendants' violations; and (6) the extent that Defendants' violations were intentional.

87. **Typicality**. **Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All claims are based on the same facts and legal theories.

88. **Adequacy of Representation**. **Fed. R. Civ. P. 23(a)(4)**. Plaintiff is an adequate representatives of the putative class because her interests coincide with, and are not antagonistic to, the interests of the members of the class that she seeks to represent. Plaintiff has retained counsel competent and experienced in such litigation, and they intend to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the

members of the class. Neither Plaintiff nor her counsel have any interests that might cause them to not vigorously pursue this action.

89.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

90.    Defendants violated § 1962(d) of RICO by agreeing to violate § 1962(c), as evidenced by the agreements regarding the purchase and collection of the debt.

91.    Accordingly, Defendants are jointly and severally liable to Plaintiff and the putative class members for actual damages, treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## COUNT THREE:
### VIOLATION OF STATE USURY LAWS
### (CLASS CLAIM AGAINST ALL DEFENDANTS)

92.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

93.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class initially defined as follows:

> All consumers who: (1) lived in Michigan or any state with similar usury laws; (2) when they entered into a loan agreement with Great Plains; and (3) who were the subject of collection or attempted collection by Global Trust Management and/or QPS.

> Plaintiff is a member of this class.

94.     **Numerosity**. **Fed. R. Civ. P 23(a)(1).** Based on the revenue collected from consumers, numerosity is easily satisfied. Members of the putative Class are disbursed making joinder impracticable. Additionally, the names and addresses of the Class Members are identifiable through the internal business records maintained by Defendants, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

95.     **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative Class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether charged interest in excess of that permitted by Michigan and other states with similar laws; (2) whether Plaintiff may recover from Defendants the amounts paid on the loans; and (3) what is the proper recovery for Plaintiff and the class members against each Defendant for their violations.

96.     **Typicality**. **Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All claims are based on the same facts and legal theories.

97.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4)**. Plaintiff is an adequate representatives of the putative class because her interests coincide with, and are not antagonistic to, the interests of the members of the class that she seeks to represent. Plaintiff has retained counsel competent and experienced in such litigation, and they intend to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor her counsel have any interests that might cause them to not vigorously pursue this action.

98.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system because of the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

99.     All of the loans included in the class definition contained interest rates in excess of each state's respective usury cap.

100.    As explained above, Defendants each received revenues collected on the loans.

101.    Plaintiff paid interest in excess of that permitted by Michigan law.

102.    Accordingly, Plaintiff and the Class Members are entitled to recover all interest repaid on the void loans, any fees associated with the loan or collection charges, as well as attorneys' fees and costs.

## COUNT FOUR:
## UNJUST ENRICHMENT
## (CLASS CLAIM AGAISNT ALL DEFENDANTS)

103.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

104.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class—the "Unjust Enrichment Class"—initially defined as:

> All consumers who: (1) lived in Michigan or any state with similar usury laws; (2) when they entered into a loan agreement with Great Plains; and (3) who were the subject of collection or attempted collection by Defendants.

> Plaintiff is a member of this class.

105.    **Numerosity. Fed. R. Civ. P 23(a)(1).** Based on the revenue collected from consumers, numerosity is easily satisfied. Members of the putative Class are disbursed, making joinder impracticable. Additionally, the names and addresses of the Class Members are identifiable through the internal business records maintained by Defendants, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

106.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative Class, and there are no factual or legal issues that differ between the putative Class Members. These questions predominate over the questions affecting only individual Class Members. The principal issues include: (1) whether Plaintiff and the Class Members conferred a benefit on Defendants; (2) whether Defendants knew or should have known of the benefit; (3) whether Defendants retained

an unjust benefit because the loans on which they collected payments were void; and (4) what is the proper recovery for Plaintiff and the Class Members against each of Defendants.

107.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All claims are based on the same facts and legal theories.

108.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4)**. Plaintiff is an adequate representatives of the putative class because her interests coincide with, and are not antagonistic to, the interests of the members of the class that she seeks to represent. Plaintiff has retained counsel competent and experienced in such litigation, and they intend to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor her counsel has any interests that might cause them to not vigorously pursue this action.

90.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system because of the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the

litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

91.     All of the loans included in the class definition are void and unenforceable where they were made in violation of state usury laws.

92.     Plaintiff conferred a benefit on Defendants when she repaid the void loan because, legally, she had no obligation to do so and, therefore, Defendants were owed nothing; Defendants knew or should have known of the benefit; and Defendants have been unjustly enriched through their receipt of any amounts in connection with the unlawful loans such that it would be inequitable for Defendants to retain the money they received.

93.     Accordingly, on behalf of herself and all other consumers similarly situated, Plaintiff seeks to recover from Defendants, jointly and severally, all amounts repaid on the loan.

## COUNT FIVE:
## VIOLATION OF FDCPA, 15 U.S.C. § 1692e
## (CLASS CLAIM AGAINST GLOBAL TRUST)

94.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

95.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class (the "FDCPA § 1692e Class") initially defined as:

> All consumers who: (1) lived in Michigan or any state with similar usury laws; (2) when they entered into a loan agreement with Great Plains; (3) who were the subject of collection or attempted collection by Global Trust; (4) within one year of the filing of the Complaint or during the pendency of the action.

> Plaintiff is a member of this class.

96.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the Class Members are so numerous that joinder of all is impractical. Class Members are spread across the United States. The names and addresses of the class members are identifiable

24

through the internal business records maintained by Defendant Global Trust, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

97.     **Predominance of Common Questions of Law and Fact.** Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative Class Members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Global Trust is a debt collector; (2) whether Global Trust violated § 1692e of the FDCPA by attempting to collect debts that were void; and (3) the appropriate amount of statutory damages given the frequency and persistence of Global Trust's violations of § 1692e, the nature of Global Trust's violations, and the extent that Global Trust's violations were intentional. **Typicality.** Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All claims are based on the same facts and legal theories.

98.     **Adequacy of Representation.** Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representatives of the putative class because her interests coincide with, and are not antagonistic to, the interests of the members of the class that she seeks to represent. Plaintiff has retained counsel competent and experienced in such litigation, and they intend to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor her counsel have any interests that might cause them to not vigorously pursue this action.

99.     **Superiority.** Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The

damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Global Trust's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

100.    Global Trust violated § 1692e by using unfair and deceptive practices to collect on the invalid or unenforceable debts.

101.    Global Trust violated § 1692e by using unfair and deceptive practices to collect on the invalid or unenforceable debts because there was no valid agreement creating the debt and they had no right to collect the debt.

102.    Global Trust's dunning letters referred to the debt as "delinquent," a term that can only apply to a valid debt that has been unpaid. Illegal loans, by their very nature, cannot be delinquent.

103.    Global Trust violated § 1692e by deceptively labeling the debts as though they were legal, valid, and enforceable when they were not.

104.    Plaintiff and the putative Class Members suffered actual damages as a result of Global Trust's violations of § 1692e.

105.    Based on Global Trust's noncompliance with § 1692e, Plaintiff seeks, individually and on behalf of the Class, actual damages, statutory damages, reasonable attorneys' fees, and costs, pursuant to 15 U.S.C. § 1692k.

**COUNT SIX:**
**VIOLATION OF FDCPA, 15 U.S.C. § 1692f**
**(CLASS CLAIM AGAINST GLOBAL TRUST)**

106.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

107.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class—the "FDCPA § 1692f Class"—initially defined as:

> All consumers who: (1) lived in Michigan or any state with similar usury laws; (2) when they entered into a loan agreement with Great Plains; (3) who were the subject of collection or attempted collection by Global Trust; (4) within one year of the filing of the Complaint or during the pendency of the action.

> Plaintiff is a member of this class.

108.    **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the Class Members are so numerous that joinder of all is impractical. Class Members are spread across the United States. The names and addresses of the class members are identifiable through the internal business records maintained by Global Trust, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

109.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative Class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The common questions include: (1) whether Global Trust is a debt collector; (2) whether Global Trust violated § 1692f of the FDCPA by attempting to collect debts that were void; and (3) the appropriate amount of damages.

27

110.   **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All claims are based on the same facts and legal theories.

111.   **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the members of the class that she seeks to represent. Plaintiff has retained counsel competent and experienced in such litigation, and they intend to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor her counsel have any interests that might cause them to not vigorously pursue this action.

112.   **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system because of the legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

113.    Global Trust violated § 1692f by collecting amounts from Plaintiff and class members that were not "permitted by law." The illegal loans are, by definition, not amounts that are due to be paid through a valid, legal agreement.

114.    Global Trust violated § 1692f by collecting from Plaintiff and Class Members amounts not legally due because the debts were void or unenforceable under state law.

115.    Plaintiff and the putative Class Members suffered actual damages as a result of Global Trust's violations of § 1692f.

**116.**    Based on Global Trust's violations of § 1692f, Plaintiff seeks, individually and on behalf of the Class, actual damages, statutory damages, reasonable attorneys' fees, and costs, pursuant to 15 U.S.C. § 1692k.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE,** Plaintiff requests that the Court enter judgment on behalf of herself and the Classes she seeks to represent against Defendants for:

A.    Certification for this matter to proceed as a class action;

B.    Actual and statutory damages as pleaded herein;

C.    Treble damages and other penalties as pleaded herein;

D.    Attorneys' fees, litigation expenses, and costs of suit;

E.    Injunctive and other equitable relief as may be appropriate; and

F.    Such other or further relief as the Court deems proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,
**TONONA THOMPSON**

By: _____/s/_____
Leonard A. Bennett, Esq., VSB #37523
Craig C. Marchiando, Esq., VSB #89736
CONSUMER LITIGATION ASSOCIATES, P.C.

763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA  23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
Casey S. Nash, Esq., VSB # #84261
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com

*Counsel for Plaintiff*